UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-11632-RGS

JOANNA BAKER

v.

COLUMBIA SUSSEX MANAGEMENT, LLC; ALANAH SHERMAN;
MARGARET MAHER; HEATHER SIDDERS; REBECCA LINGARD;
JENNA ZANNINO; TODD REICHELT; and CHRISTIN PRESTIA

MEMORANDUM AND ORDER
ON DEFENDANTS' PARTIAL MOTION TO DISMISS

December 29, 2021

STEARNS, D.J.

Plaintiff Joanna Baker brings this employment discrimination lawsuit against defendants Columbia Sussex Management, LLC (Columbia Sussex), and seven of its employees. Baker alleges that while serving as the catering manager at the Marriott Boston Quincy (the Hotel), a hotel owned by Columbia Sussex, she was subjected to repeated acts of discrimination culminating in senior management's acquiescence to the demands of her coworkers that she be fired. Defendants now collectively seek to dismiss eight counts in the eleven-count Complaint in full, and the remaining counts in part. For the following reasons, the court will allow the motion in part.

## BACKGROUND

The Complaint alleges the following facts, which the court must accept in ruling on defendants' motion to dismiss.

Columbia Sussex hired Baker to serve as the Director of Events and Catering for the Hotel.[1]  At the time, defendant Todd Reichelt was the General Manager of the Hotel and Baker's supervisor.  Defendants Margaret Maher served as the Director of Sales, Alanah Sherman as the Senior Director of Events, and Heather Sidders as the Destination Sales Executive.  Defendants Rebecca Lingard, Christin Prestia, and Jenna Zannino worked in non-managerial staff roles.[2]

In her first week at the Hotel, Baker learned that a banquet department employee had used a racist slur when referring to an African American manager.[3]  When Baker — a woman of mixed-race heritage born in Trinidad — reported the incident to Reichelt, he directed her to address the issue with the banquet staff.  Baker met with the banquet managers and told

---

[1] While it is not alleged in the Complaint, the parties' pleadings appear to presume that Baker was an at-will employee.

[2] The court will refer to these employees collectively as the "individual defendants."

[3] The employee stated that he would not "take direction from a n[*****]."  Compl. (Dkt # 1-1) ¶ 29.

2

them that bigoted language would not be tolerated. She also met with the supervisor of the offending employee and learned that the supervisor had forgone any disciplinary action. Baker raised the issue of discipline with Reichelt, who refused to become involved.

Sometime thereafter, the African American manager who had been the target of the racial slur complained to Baker that she had not received an expected eight months of incentive pay. Baker relayed the manager's grievance to Reichelt, who "seemed annoyed," but told Baker that the manager would receive the bonus in her next paycheck. Compl. ¶¶ 43-44. When that did not happen, Baker again complained to a now "visibly annoyed" Reichelt. *Id*. ¶ 46.

In late January of 2020, at a meeting with Maher, Prestia, Sherman, and Zannino, Baker heard Prestia complain that the Hotel's Indian customers were "always trying to get something for nothing" because "that's just the way they are." *Id*. ¶ 48. Maher, Sherman, and Zannino "piped up with a chorus of agreement." *Id*. ¶ 49. Baker told the group that their comments were offensive and "needed to stop" and that "all people are happy to get something for nothing" regardless of their race. *Id*. ¶ 50. She also explained that she was of partial Indian descent and had Indian family

3

members. Her fellow employees responded with "hostile silence." *Id.* ¶ 51. Following the meeting, Maher reported the conversation to Reichelt, who then sought out Baker and inquired if she was "OK." *Id.* ¶ 53.

Columbia Sussex fired Baker on February 5, 2020. Reichelt told Baker that she was being terminated because a "group" of her fellow employees had threatened to quit if Baker was not let go. *Id.* ¶ 55. He added that if Baker stayed, "there would not be one person left in the banquet department." *Id.* ¶ 56. After her termination, Baker filed a claim for discrimination and retaliation with the Massachusetts Commission Against Discrimination, and after the right to sue accrued, brought this lawsuit in the Norfolk Superior Court. The defendants then removed the case to the federal district court. That brings us to the partial motion to dismiss.

## DISCUSSION

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Iqbal*, 556 U.S. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

Defendants move to dismiss Counts I, II, III, VI, VII, IX, X, and XI of the Complaint in full and Counts IV and V to the extent that they assert claims of sex discrimination. Defendants concede that Baker has stated with a sufficient degree of plausibility claims against the individual defendants for discrimination based on race and national origin (Counts IV and V), and a claim of retaliation against Columbia Sussex (Count VIII). The court will address the challenged causes of action in the order they appear in the Complaint.

    a. <u>**Count I: Tortious Interference with Advantageous Business Relations (against the individual defendants)**</u>

To allege a claim for intentional interference with contractual or business relations, a plaintiff must show

5

> (1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages.

*Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 397 (1996). "[S]omething more than intentional interference is required" to make out the tort. *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 815 (1990) (adopting Restatement (Second) of Torts § 766 (1977) and holding that the interference must be "improper"). While a plaintiff need not prove both improper means *and* motive, *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991), she must show at least one of the culpable states. Where a defendant (like Reichelt) is sued in his corporate capacity, the plaintiff must further show that the interference was motivated by "actual malice," meaning "a spiteful, malignant purpose, unrelated to the corporate interest." *Blackstone v. Cashman*, 448 Mass. 255, 261 (2007), quoting *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 476 (1992); *see also Boothby v. Texon, Inc.*, 414 Mass. 468, 487 (1993).

The Complaint alleges that Zannino, Prestia, Sherman, Sidders, Lingard, and Maher interfered with Baker's business relationship with Columbia Sussex by disparaging her performance, making false accusations

6

against her, criticizing her management style, and demanding that she be fired, and in Reichelt's case, failing to fairly investigate employees' complaints against her. *See* Compl. ¶ 60. These allegations are largely premised upon Baker's understanding that the individual defendants were among the group of employees who threatened to resign if Columbia Sussex did not fire her. Baker admits, however, that she does not know the identity of this "core" group of employees. *See id.* ¶ 76. While it is true that a coworker may be liable on a claim of tortious interference for unjustifiably complaining to senior management about her fellow worker's job performance or attitude or by threatening to management that he or she will quit unless the plaintiff is terminated, none of this is alleged with sufficient specificity in the Complaint against any named defendant to survive dismissal. In other words, there is no who, what, when, or how alleged that would show improper purpose on the part of any of these defendants. All that is alleged is that these defendants collectively may (or may not) have been part of "group" of employees who sought to persuade management (Reichelt) to fire the plaintiff.

As for the claim against Reichelt, Baker has not alleged that he terminated her out of actual malice. The Complaint asserts that Reichelt

"wrongfully acquiesced" to the demands of a group of employees that he terminate her. *Id.* ¶ 60. This allegation, if proven true, fails to "rise to the level of personal hostility or ill-will to satisfy the malice standard." *Cf. Weber v. Cmty. Teamwork, Inc.*, 434 Mass. 761, 783 (2001) (while a supervisor's abrupt termination of the plaintiff and his failure to explain his reasons to her may have been unfair and poor management practice, it did not rise to the level of personal ill-will and hostility sufficient to justify the broad privilege to terminate an at-will employee for any reason or no reason at all).

The court will therefore dismiss Count I against each of the individual defendants.

> **b. Count II: Wrongful Termination (against Columbia Sussex and Reichelt); Count III: Violation of the Duty of Good Faith and Fair Dealing (against Columbia Sussex)**

Baker has agreed to withdraw her claims for wrongful termination and breach of the implied covenant of good faith and fair dealing. *See* Opp'n (Dkt # 17) at 9. The court will accordingly dismiss Count II and Count III of the Complaint.

> **c. Count IV: Discrimination Based on Race, Gender, and National Origin Under Title VII of the Civil Rights Act of 1964 (against Columbia Sussex); Count V: Discrimination Based on Race, Gender and**

## National Origin Under Massachusetts General Laws Chapter 151B (against Columbia Sussex)

Defendants seek dismissal only of Baker's sex discrimination claims. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2.  At the pleading stage, a complaint must only raise a plausible sex discrimination claim, and a plaintiff "need not plead facts sufficient to establish a prima facie case." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013). Nonetheless, the elements of a prima facie case "are part of the background against which a plausibility determination should be made."  *Id.*  To establish a prima facie sex discrimination case under Title VII, an employee must prove that: "(1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person."  *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000).[4]

Baker has not alleged sufficient facts to raise a plausible claim that

---

[4] The standard under Mass. Gen. Laws ch. 151B is the same.  *See*

9

Columbia Sussex discriminated against her based on her sex. The Complaint asserts that Baker, a woman, was a member of a protected class, and that Columbia Sussex took adverse action against her when it terminated her. However, Baker's allegations that she performed her job satisfactorily and was replaced by someone of comparable qualifications are conclusory. *See, e.g.*, Compl. ¶ 108 (discussing Baker's "objectively appropriate and even outstanding management skills in team building and effective leadership"); *id.* ¶ 102 (failing to allege who replaced Baker beyond that her replacement was "a Caucasian woman with similar qualifications as Baker"). Moreover, the Complaint does not allege facts that raise a plausible inference that Baker was subject to sex discrimination. While it alleges that Baker was described by her coworkers as "mean" and "aggressive," Compl. ¶¶ 106-109, the Complaint does not attribute these stray remarks to a decisionmaker (or to any named employee). Accordingly, the court will allow defendants' partial motion to dismiss Count IV and Count V.

### d. Count VI: Violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11H (against all defendants)

Baker cannot maintain her claim for violation of the Massachusetts

---

*Quinones v. Buick*, 436 F.3d 284, 289 n.1 (1st Cir. 2006).

Civil Rights Act, Mass. Gen. Laws ch. 12, § 11H (MCRA), because Chapter 151B preempts other statutory employment discrimination claims. Chapter 151B states:

> [A]s to acts declared unlawful by section 4 [for employment discrimination], the administrative procedure provided in this chapter under section 5 shall, while pending, be exclusive; and the final determination on the merits shall exclude any other civil action, based on the same grievance of the individual concerned.

Mass. Gen. Laws. ch. 151B, § 9. It is settled that Chapter 151B "provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections." *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 586 (1994); *see also Green v. Wyman-Gordon Co.*, 422 Mass. 551, 557-558 (1996) ("Where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive, in the absence of an explicit legislative command to the contrary."). Applying this state-law principle, courts in this district have routinely dismissed MCRA claims premised on employment discrimination. *See, e.g.*, *Dyer v. E. Coast Diners, LLC*, 33 F. Supp. 3d 82, 90 (D. Mass. 2014); *Felinska v. New Eng. Teamsters & Trucking Indus. Pension Fund*, 855 F. Supp. 474, 477 (D. Mass. 1994).

The court does not agree with Baker's contention that she is entitled to raise a MCRA claim because, following discovery, defendants might be able to show that she does not have a remedy under Chapter 151B. There is no

11

support for a reading of Chapter 151B that would render its remedial scheme exclusive only when a claimant can show entitlement to a favorable judgment on the merits. *See* Mass. Gen. Laws ch. 151B, § 9.

The court also disagrees with Baker that the exclusivity of Chapter 151B's remedial scheme violates principles of equal protection. The Equal Protection Clause subjects to strict scrutiny laws providing for the unequal treatment of protected classes of people. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Here, the exclusivity provision of Chapter 151B's remedial scheme differentiates only between individuals with claims arising under statute and those with preexisting tort or constitutional claims. Baker provides no support for her argument that all individuals with statutory employment discrimination claims constitute a protected class for Equal Protection purposes. The court will therefore dismiss Count VI.

> e. **Count VII: Interference in Violation of Mass. Gen. Laws ch. 151B, § 4(4A) (against Columbia Sussex, Lingard, Maher, Prestia, Sherman, Sidders, and Zannino)**

Massachusetts General Laws ch. 151B, § 4(4A) makes it unlawful

> [f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged

12

> any other person in the exercise or enjoyment of any such right granted or protected by this chapter.

To state a claim under Chapter 151B, § 4(4A), a plaintiff must allege facts showing "that the defendant interfered with her rights under [Chapter 151B] in deliberate disregard of those rights." *Saari v. Allegro Microsystems, LLC*, 436 F. Supp. 3d 457, 467 (D. Mass. 2020) (internal punctuation omitted). A complaint must allege "intentional" and "actionable" discriminatory conduct. *McLaughlin v. City of Lowell*, 84 Mass. App. Ct. 45, 73-74 (2013).

Baker states an interference claim against Columbia Sussex by asserting that the company fired her for discriminatory reasons. She has not, on the other hand, alleged sufficient facts to bring an interference claim against the individual defendants. Baker alleges that, during a meeting, Prestia made disparaging comments about hotel guests of Indian descent with which Sherman, Maher, and Zannino agreed. *See* Compl. ¶¶ 48-49. In response to Baker's objections to those comments, Maher spoke to Reichelt. *See id.* ¶ 52. Sidders was not present at the meeting where derogatory comments about persons of Indian descent were allegedly made, but repeatedly told Baker "that she was not going to get ahead because she did not speak proper English." *Id.* ¶ 103. Baker makes no allegations at

13

all against Lingard. These facts, taken as true, do not rise to the level of actionable discriminatory interference with Baker's rights under Chapter 151B. Indeed, none of the individuals present at the January 2020 meeting had any decision-making authority with regard to Baker's employment. *See id.* ¶¶ 22-23. At most, the offensive comments made to Baker reflect insensitivity on the part of her coworkers to her Indian heritage. *See González v. El Día, Inc.,* 304 F.3d 63, 69 (1st Cir. 2002) ("'[S]tray workplace remarks,' as well as statements made either by nondecision makers or by decision makers not involved in the decisional process normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus."); *see also Thompson v. Coca-Cola Co.,* 522 F.3d 168, 178 (1st Cir. 2008) (same). Although Baker does allege that a group of Columbia Sussex employees sought to have her fired, she concedes that she does not know who belonged to that group. *See id.* ¶ 76. Thus, the court will dismiss Count VII against Zannino, Sherman, Maher, Prestia, Lingard, and Sidders.

> **f. Count VIII: Retaliation in Violation of Mass. Gen. Laws ch. 151B, § 4(4) (against Columbia Sussex, Lingard, Maher, Prestia, Sherman, Sidders, and Zannino)**

Under Massachusetts General Law ch. 151B, § 4(4), it is unlawful "[f]or

14

any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five." To state a claim under § 4(4) for retaliation, a plaintiff must show "that [s]he engaged in protected conduct, that [s]he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action." *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707 (2011), citing *Mole v. Univ. of Mass.*, 442 Mass. 582, 591-592 (2004).

      Defendants do not deny that for pleading purposes Baker states a claim for retaliation against Columbia Sussex. First, in advocating for another Black, female employee to receive her incentive pay, Baker engaged in protected conduct. *See Ritchie v. Dep't of State Police*, 60 Mass. App. Ct. 655, 664-665 (2004) (finding that complaints to management are protected conduct under § 4(4)). Columbia Sussex does not dispute that Baker suffered an adverse action when her employment was terminated. Finally, the court can make the reasonable inference that there was a causal connection between Baker's advocacy and Columbia Sussex's decision to terminate her as the Complaint alleges that when Baker advocated on behalf

15

of her colleague, Reichelt became visibly annoyed. *See* Compl. ¶¶ 43, 46.

In contrast, Baker does not allege facts that would allow the court to infer that any of the individual defendants retaliated against her or even had the means of doing so. Accordingly, the court will dismiss Count VIII against Zannino, Sherman, Maher, Prestia, Lingard, and Sidders.

### g. Count IX: Aiding and Abetting in Violation of Mass. Gen. Laws ch. 151B, § 4(5) (against Lingard, Maher, Prestia, Sherman, Sidders, and Zannino)

It is unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." Mass. Gen. Laws. ch. 151B, § 4(5). To prevail on an aiding and abetting claim, a plaintiff must show:

> (1) that the defendant committed a wholly individual and distinct wrong separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive the plaintiff of a right guaranteed him or her under G.L. c. 151B.

*Lopez v. Commonwealth*, 463 Mass. 696, 713 (2012) (internal punctuation omitted). An aiding and abetting claim "requires showing a defendant's intention to provide substantial, supporting assistance to intentional conduct in violation of the Massachusetts General Laws chapter 151B."

16

*Furtado v. Standard Parking Corp.*, 820 F. Supp. 2d 261, 279 (D. Mass. 2011).

As with Counts VII and VIII, Baker has failed to plead that any of the individual defendants participated in depriving her of the right to employment free from discrimination. Baker proffers only the conclusory allegation that Zannino, Prestia, Sherman, Sidders, Maher, and Lingard "aided, abetted, incited, [and] compelled Reichelt and Columbia Sussex to discriminate and retaliate" against her. Compl. ¶ 138. Yet she has not alleged how any of the defendants did so — particularly by acknowledging that she does not know whether any of them were among the employees who threatened to quit if Columbia Sussex did not fire her. The court will dismiss Count IX in full.

### h. Count X: Civil Conspiracy Using Coercion (against all defendants); Count XI: Civil Conspiracy (against all defendants)

Baker asserts two theories of civil conspiracy against Columbia Sussex and the individual defendants. The first requires her to "allege that defendants, acting in unison, had some peculiar power of coercion over [her] that they would not have had if they had been acting independently." *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994). This

17

type of conspiracy, whose scope is "very limited," *id.*, exists where "the wrong was in the particular combination of the defendants rather than in the tortious nature of the underlying conduct," *Kurker v. Hill*, 44 Mass. App. Ct. 184, 188 (1998). The typical example of coercive civil conspiracy consists of collusion between market competitors. *See Snyder v. Collura*, 812 F.3d 46, 52 (1st Cir. 2016).

The second type of civil conspiracy, which Baker alleges in Count XI, requires her to plead facts of "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Aetna*, 43 F.3d at 1564. Under this theory, "liability is imposed on one individual for the tort of another." *Kurker*, 44 Mass. App. Ct. at 188.

Baker has not stated a claim under either civil conspiracy theory. She does not allege the coordinated action or common design or agreement that is necessary to both theories. Baker argues that Columbia Sussex conspired with the individual defendants when it acquiesced to their threats to quit en masse unless it fired her. *See* Opp'n at 19. As noted above, Baker has not actually alleged that any of the individual defendants were among those who

18

threatened to quit. For that reason, the court will dismiss Baker's civil conspiracy claims.

## ORDER

For the foregoing reasons, the court ALLOWS defendants' motion to dismiss Counts I, II, III, VI, IX, X, and XI in full. The court ALLOWS defendants' partial motion to dismiss Counts IV and V. The court ALLOWS the motion to dismiss Counts VII and VIII as to Lingard, Maher, Prestia, Sherman, Sidders, and Zannino and DENIES the motion to dismiss Counts VII and VIII as to Columbia Sussex.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE